(33 Misc. Rep. 516.)

### LA FRANCE FIRE–ENGINE CO. v. CITY OF SYRACUSE.

(Supreme Court, Trial Term, Onondaga County. December, 1900.)

1. MUNICIPAL CORPORATIONS—CONTRACTS—AUTHORITY TO MAKE—VALIDITY—RATIFICATION.

A city charter required all purchases of supplies to be made by its council from the lowest bidder after proposals therefor had been duly advertised. The fire commissioners, without authority, purchased a truck, and it was used by the city, and its price was included in a tax budget approved by the council. *Held* not to constitute a ratification of the contract which would authorize a recovery thereon by the seller, since, as the council could not have contracted without advertising for bids, it could not ratify such contract.

2. SAME—ESTOPPEL.

The city is not estopped from setting up illegality in the contract as a defense to an action for the purchase price of the truck.

3. SAME—QUANTUM MERUIT.

Where a city charter requires all purchases to be made by the council from the lowest bidder after proposals for bids have been duly advertised, one who contracts with the fire commissioners for the sale of fire apparatus, which is delivered to and used by the city, in accordance therewith, cannot recover on a quantum meruit, since there cannot be an implied promise to pay for goods which could not be purchased except in a prescribed manner.

4. SAME.

Where a truck is purchased by the fire commissioners of a city, who are not authorized so to do, and without advertising for bids, as required by the city charter, the seller may recover the truck from the city.

Action by the La France Fire-Engine Company against the city of Syracuse to recover the price of apparatus sold the city. Judgment for plaintiff.

Gill & Stillwell, for plaintiff.
M. Z. Haven, for defendant.

ANDREWS, J.   Prior to January 1, 1900, the fire department of the city of Syracuse was under the general supervision and control of a board of fire commissioners.  Section 185 (Laws 1885, c. 26) of the revised charter, then in force, provided that all purchases, sales, or expenses connected with the extension or enlargement of the real property, structures, and apparatus of said department should be under the direction and control of the common council, except as hereinafter provided.  Concededly, no subsequent section gave to the board power to purchase apparatus without the approval of the council.  Section 228 provided that no officer of the city or other person shall have power and each and every person is prohibited from making any purchases, or contracting any debts, on the part of the city, unless specially authorized by the common council so to do.  Section 233 provided that whenever the common council shall require any work to be done, or materials or supplies to be furnished, the nature of which will admit of competition on the part of those who might do or furnish the same, the same shall be done or furnished, as the case may be, by contract, if an expenditure of more than $75 shall be involved, and such contract shall be awarded to the lowest bidder.  The proposals shall be advertised for at least five days in the official papers of the city, and shall be in such form, as the council may prescribe.  On the 25th day of September, 1899, the board of fire commissioners, without any authorization by the common council, adopted a resolution that its clerk should obtain specifications for an aerial truck, 55 feet in length, from three manufacturers, one of whom was the plaintiff.  Such specifications were obtained as the manufacturers chose to furnish, whether alike or not does not appear, and on the 16th day of October, 1899, the clerk submitted three proposals, each agreeing to furnish such a truck as was specified for $2,800.   On November 20th the board directed its president to enter into a contract with the plaintiff for a 55-foot hook and ladder truck, in accordance with its bid of $2,800, and on the 24th the president executed and delivered such a contract.   On January 1, 1900, the revised charter was superseded by the charter for cities of the second class.  The board of fire commissioners was thereby abolished, and the supervision and control of the fire department was given to a commissioner of public safety.  Section 120 of this latter act provided substantially that all contracts for the performance of any work, or the supply of any materials for the department of public safety, in cases where the work or material shall exceed in cost $50, shall be let to the lowest bidder, after public notice, and after the preparation of specifications.  On January 21, 1900, the plaintiff delivered the hook and ladder truck in question to the city of Syracuse.  It was received by the commissioner of public safety.  It was tried and accepted by him, and was put into immediate use, and ever since has been in the possession of the city.  It is stipulated that the truck was a necessary appliance for the proper and efficient working of the fire department of the city of Syracuse, and was reasonably worth the sum of $2,800.  Acting under the provision of the charter of cities of the second class, during the year 1900 the board of estimate and apportionment included in its esti-

mate for the expenses of the city for the fiscal year the sum of $2,800, to be used for the purpose of paying the plaintiff for said truck. This estimate was approved by the common council of the city, and the same was included in the tax budget for the year 1900, and has been raised by taxation, and is now in the hands of the city treasurer, subject to the warrant of the comptroller, as a part of the money appropriated for the expenses of the fire department for the year 1900. Under these circumstances, the question to be decided is whether the contract in question has been ratified by the city, or whether the city is estopped from disputing its validity. If both these questions are answered in the negative, may the plaintiff recover on the theory of a quantum meruit?

The contract as made was concededly unauthorized. There was no advertisement, no proposals, no competitive bidding, within the true sense of the term. Shaw v. City of Trenton, 49 N. J. Law, 339, 12 Atl. 902; People v. Board of Improvement of Union St., 43 N. Y. 227; Mazet v. City of Pittsburg, 137 Pa. St. 548, 20 Atl. 693; People v. Buffalo Co. Com'rs, 4 Neb. 150; Kneeland v. Furlong, 20 Wis. 437. This provision in regard to contracts is not a merely formal and unimportant matter. It is "based upon motives of public economy, and originated, perhaps, in some degree of mistrust of the officers to whom the duty of making contracts for the public service was committed. If executed according to its intention, it will preclude favoritism and jobbing, and such was the obvious purpose." Brady v. Mayor, etc., 20 N. Y. 312. Even where injustice would seem to result, —even where, as in this case, there is no claim of any improper motive or intent,—public policy requires that the statute, in regard to public competition, should be strictly enforced by the court. And, as bearing upon the question of equity between the parties, it should be borne in mind that those contracting with a municipality are aware of such restrictions upon its powers as are imposed by the charter. The council, therefore, could not have made this contract originally. To say that, in such a case, it may ratify such contract when made, or by any action may estop the city from disputing its validity, would be equivalent to the repeal of the statute. It would open the door to that fraud and collusion which it is the purpose of the legislature to prevent. It would be to say that the mere persistence in wrongdoing renders legal what the law forbids. So in regard to a recovery under a quantum meruit. There can be no implied promise to pay the value of goods received where there is no power to contract or to purchase, except in the manner and with the safeguards prescribed by statute. Walton v. City of New York, 26 App. Div. 76, 49 N. Y. Supp. 615; McDonald v. Mayor, etc., 68 N. Y. 27; Smith v. City of Newburgh, 77 N. Y. 136; Dickinson v. City of Poughkeepsie, 75 N. Y. 65; People v. Gleason, 121 N. Y. 631, 25 N. E. 4. I must, therefore, hold that the contract for the purchase of the truck was void, that it was incapable of ratification by any subsequent act of the city authorities, and that they are not estopped from now setting up such illegality as a defense to this action. I must also hold that there can be no recovery on the theory of a quantum meruit.

It does not follow that the plaintiff is entirely without redress. It is clear that it may, at least, recover the possession of the truck. The plaintiff also claims the right to recover an item of $6.35 for various supplies furnished to the fire department of the city during the year 1899. Without discussing in detail the defense interposed by the defendant as to this claim, I have concluded it is properly chargeable against the city, and should be allowed. Judgment, therefore, should be directed in favor of the plaintiff against the city of Syracuse for the sum of $6.35, but, under the agreement made by the parties, without costs.

Ordered accordingly.