[L. A. No. 4095. In Bank.—October 5, 1915.]

## W. A. REAMS, Appellant, v. L. E. COOLEY, as Superintendent of Schools of the County of Imperial, Respondent.

UNION HIGH SCHOOL DISTRICTS—CONTRACT FOR ERECTION OF SCHOOL BUILDING—ADVERTISING FOR BIDS ESSENTIAL TO VALIDITY.—Under section 1674 and subdivision 22 of section 1617 of the Political Code, the trustees of a union high school district have no power, in the course of the construction of a high school building, to contract for a portion of the work involving an expenditure of more than two hundred dollars, without advertising for competitive bids and awarding the contract to the lowest responsible bidder. A contract so attempted to be made is void.

ID.—DISTRICT NOT LIABLE ON QUANTUM MERUIT.—In view of the express limitations upon the power of the board to contract imposed by subdivision 22 of section 1617 of the Political Code, the fact that the district received the benefit of the labor and materials of the contractor, does not render it liable therefor on an implied contract in an action on *quantum meruit.*

ID.—STATUTORY LIMITATIONS ON POWER TO CONTRACT.—When by statute the power of a board or municipality to make a contract is limited to a certain prescribed method of doing so, and any other method of doing it is expressly or impliedly prohibited, no implied liability can arise for benefits received under a contract made in violation of the particularly prescribed statutory mode. Under such circumstances, the statutory mode is the measure of the power.

APPEAL from a judgment of the Superior Court of Imperial County. Franklin J. Cole, Judge.

The facts are stated in the opinion of the court.

Conkling & Brown, for Appellant.

Phil D. Swing, District Attorney, and J. S. Larew, for Respondent.

LORIGAN, J.—A further hearing in this court was ordered in the above cause after a judgment in the district court of appeal for the second appellate district affirming the judgment of the superior court.

Appellant sought by a writ of mandate to compel the respondent, as superintendent of schools of Imperial County, to approve and allow a warrant for $531, drawn in his favor by the board of trustees of the Central Union High School district of that county. The amount of this warrant was intended to cover the cost of certain outside plaster work done by appellant on the high school building.

It appears from the findings of fact made by the trial court that the high school board had adopted plans for a school building; that the superintendent of schools refused to approve the plans unless certain of the work mentioned in the specifications be omitted, which included, as described therein, "plaster on the brick and cement walls." This latter work was eliminated from the contract then entered into, the contractor agreeing to construct the building for six thousand one hundred dollars. The board of trustees, however, before the building was completed determined to have the work of plastering the brick walls done. Appellant was employed to do so under an arrangement between the trustees and the original contractor and the warrant which respondent, the school superintendent, refused to approve, represented this work which appellant performed.

The principal ground upon which the respondent refused to approve the warrant was that it was not legally issued, being for work performed under a contract not awarded as a result of competitive bidding.

In disposing of this point, the district court of appeal, in an opinion written by Justice James, said:

"As to whether competitive bids should have been called for as a preliminary to contracting for the plastering work, must be decided upon an examination of the provisions of sections 1617 and 1674 of the Political Code. The objection made by respondent, that bids should have been first advertised for, is not answered when appellant says that this work was included within the original specifications upon which the contractor's bid for the construction of the building was made. This bid was modified by the making of a certain deduction therefrom, which included the plastering and some other work, and the

contract as finally entered into was a different one from that upon which the bids had been made. This left the matter of the plastering, etc., to be done under a separate contract, as the board finally decided that it should be done. It is admitted that no competitive bids were asked upon the plastering work alone, but that the contract for the work was made by taking as a basis the price for which the contractors on the building would have done it under their total bid, and decreasing that amount by several hundred dollars. The powers and duties of boards of trustees of union high school districts are the same as those of boards of trustees of school districts, except where expressly changed by the provisions of section 1674 of the Political Code. In the latter section authority is given to such trustees to erect or lease school buildings, but the method to be pursued by them in the letting of the contract is governed by the provisions of section 1617, subdivision 22 of the Political Code, defining the general duties and powers of boards of trustees of common school districts. In the section last mentioned, and in subdivision 22, at the time of the proceedings taken for the erection of the school building, was contained this provision: 'To let all contracts involving an expenditure of more than two hundred dollars for work to be done or for materials or supplies to be furnished, . . . to the lowest responsible bidder who will give such security as the board may require or else to reject all bids; . . . For the purpose of securing bids the board must publish a notice calling for bids, stating the work to be done or materials or supplies to be furnished, and the time when and the place where bids will be opened, at least once a week for two weeks in some daily or weekly newspaper published in the county, or if there is no such paper, then in some newspaper circulated in such county.' Very clearly it is made to appear then, that, as the work of plastering the exterior of the school building amounted to more than the sum of two hundred dollars, the contract should only have been let after bids had been obtained in the manner prescribed. The remedy, if such the plastering contractor has, is not against the district, where his contract is void because of irregularities committed which go to the jurisdiction of the high school board.

"The evidence, as we view it, does sustain the findings as made, and the judgment of the court should be upheld."

We are satisfied with the reasoning and conclusion of the district court of appeal as to the point considered by it in the foregoing opinion.

In presenting the merits of his appeal in this court appellant insists that even though the express contract entered into between himself and the school district was invalid for want of power in its board of trustees to enter into such a contract, except in the mode prescribed by subdivision 22 of section 1617 of the Political Code, still, the district having received the benefit of the labor and materials of appellant in the construction of the school building, is liable therefor on an implied contract in an action on *quantum meruit.* But in view of the express limitation upon the power of the board to contract imposed by said subdivision 22 the position of appellant is untenable. Undoubtedly, a school board, like a municipal corporation, may, under some circumstances, be held liable upon an implied contract for benefits received by it, but this rule of implied liability is applied only in those cases where the board or municipality is given the general power to contract with reference to a subject matter and the express contract which it has assumed to enter into in pursuance of this general power is rendered invalid for some mere irregularity or some invalidity in the execution thereof; where the form or manner of entering into a contract is not violative of any statutory restriction upon the general power of the governing body to contract nor violative of public policy. In the absence of such restriction on the mode or manner of contracting the same general rule applies to such inferior political bodies as to individuals and the former will be held responsible on an implied contract for the payment of benefits it receives under an illegal express contract not prohibited by law. This is the effect of the cases cited by appellant and relied on by him, notably *Higgins* v. *San Diego Water Co.,* 118 Cal. 524, [45 Pac. 824, 50 Pac. 670] , *Sacramento* v. *Southern Pacific Co.,* 127 Cal. 217, [59 Pac. 568, 825] , and *Contra Costa Water Co.* v. *Breed,* 139 Cal. 432, [73 Pac. 189]. But while the doctrine of implied liability applies where general power to contract on a subject exists and the form or manner of doing so is not expressly provided by charter or statute, the decided weight of authority is to the effect that when by statute the power of the board or municipality to make a contract is limited to a certain prescribed method of doing so and any other

method of doing it is expressly or impliedly prohibited, no implied liability can arise for benefits received under a contract made in violation of the particularly prescribed statutory mode. Under such circumstances the express contract attempted to be made is not invalid merely by reason of some irregularity or some invalidity in the exercise of a general power to contract, but the contract is void because the statute prescribes the only method in which a valid contract can be made, and the adoption of the prescribed mode is a jurisdictional prerequisite to the exercise of the power to contract at all and can be exercised in no other manner so as to incur any liability on the part of the municipality. Where the statute prescribes the only mode by which the power to contract shall be exercised the *mode* is the *measure* of the power. A contract made otherwise than as so prescribed is not binding or obligatory as a contract and the doctrine of implied liability has no application in such cases. (*Zottman* v. *San Francisco,* 20 Cal. 96, [81 Am. Dec. 96] ; *Murphy* v. *Napa County,* 20 Cal. 497 ; *Nicolson Pavement Co.* v. *Painter,* 35 Cal. 699 ; *Fountain* v. *City of Sacramento,* 1 Cal. App. 461, [82 Pac. 637] ; *Shaw* v. *San Francisco,* 13 Cal. App. 547, [110 Pac. 149] ; *Richardson* v. *Grant Co.,* 27 Fed. 495 ; *Peck-Williamson et al. Co.* v. *Steen School Tp.,* 30 Ind. App. 637, [66 N. E. 909] ; *La France Fire Engine Co.* v. *Syracuse,* 33 Misc. Rep. 516, [68 N. Y. Supp. 894].)

In the Zottman case cited, plaintiff sued the city of San Francisco to recover for work done on the public grounds of the city. The charter of the city provided that "all contracts for work," should be let to the lowest bidder after notice given through the public journals. It was conceded that the work, payment for which was sought in that action, was performed under a contract made with the common council of the city in disregard of the provisions of the charter requiring contracts for all work to be let to the lowest bidder after public notice, but it was claimed that the contract had been subsequently ratified by the corporate authorities of the city, and that aside from this plaintiff was entitled to recover upon a *quantum meruit* because the work had been performed and accepted by the city. This court, after discussing the claim of ratification at length and concluding that "where the charter authorizes a contract for work to be given only to the lowest bidder after notice of the contemplated work in the public

journals, a contract made in any other way—that is given by any other person than such lowest bidder—cannot be subsequently affirmed,'' proceeded to consider the further claim of a right to recover on a *quantum meruit.* In discussing the matter of ratification this court quoted at length from a decision of the supreme court of New York in a case which involved a claim of ratification and a right to recover on *quantum meruit* for work done for the city of New York in disregard of a similar charter provision to that of the city of San Francisco requiring all contracts for work to be let to the lowest bidder after public notice, and in which it was held that a contract let in disregard to such charter provision could not be subsequently ratified, nor could a claim of implied liability and a right to recover upon a *quantum meruit* against the city be sustained.

On the second proposition of the implied liability on the part of the city of New York, the New York case declared: '' 'The analogy drawn from the obligation of an individual to pay for work which he accepts, although there has been no previous contract for its performance, wholly fails to reach the present case. Here, neither the officers of the corporation nor the corporation, by any of the agencies through which they act, have any power to create the obligation to pay for the work, except in the mode which is expressly prescribed in the charter; and the law never implies an obligation to do that which it forbids the party to agree to do.' '' (*Brady* v. *Mayor etc. of New York,* 16 How. Pr. 432.) After quoting from this New York case our court then proceeds to an independent consideration of the question of implied liability and says: ''The second position of the appellant, that the corporation has received the benefit of the extra work of the contractors, and is in consequence liable to them upon an implied contract, is as untenable as his first position. Indeed, the argument which meets the first position shows the unsoundness of the second. If the common council could not by any subsequent action affirm and ratify a contract originally made in disregard of the requirements of the charter, so as to fasten a liability upon the corporation, it is difficult to perceive how the benefit, which may have resulted to the city in the improvement of her property from the performance of the unauthorized and illegal contract, could create any such liability. We do not question the general doctrine, that where one re-

ceives the benefit of another's work he is bound to pay for the same, but we deny its application to a case like the present. . . . There is, indeed, no evidence in the record that the extra work was ever considered by either board; but we do not rest our opinion upon the want of evidence as to the action of the common council on the subject, but upon their want of power. They could not, as we have already shown, from the restrictions imposed by the charter upon their powers, have made a valid contract in advance to pay the contractors the reasonable value of the extra work—the charter requiring all contracts for the improvement of the city property to be given out to the lowest bidder, and of course at a fixed price, after notice of the contemplated improvement in the public journals. What they thus had no authority to agree in advance to pay for the work, they had no authority to agree to pay after the work was completed. As in the case cited from New York, the difficulty existed in their want of power to bind the corporation for improvements of the city property, except in the mode prescribed by the charter. Outside of the prescribed mode, as we have stated, they were destitute of any power over the subject. As they had no authority to agree for such payment in express terms, the law could not imply any such agreement against the corporation. The law never implies an agreement against its own restrictions and prohibitions, or as it is expressed in the New York case, 'the law never implies an obligation to do that which it forbids the party to agree to do.' "

The rule announced in the Zottman case and the other authorities in line with it, must be applied here. While under sections 1617 and 1674 of the Political Code authority is given to school trustees to erect school buildings, there is at the same time by subdivision 22 of section 1617, applicable alike to boards of trustees of union high school districts as to boards of trustees of common school districts, a mode prescribed for exercising that power. By that subdivision where the work (as here) is to exceed the sum of two hundred dollars a valid contract can only be entered into with the lowest responsible bidder on competitive bidding after published notice therefor. Under the rule of the Zottman case this mode was the measure of the power. No contract, either expressly or impliedly, could be entered into by the school board except with the lowest bidder after advertisement, and, of course, no implied lia-

bility to pay upon a *quantum meruit* could exist where the prohibition of the statute against contracting in any other manner than as prescribed is disregarded.

It is urged in this case, as it invariably is in all such cases, that the application of this rule works a great hardship if the school district may retain the benefit of the work of the contractor and be relieved of liability to compensate him therefor. But the provision of the law limiting the power of school boards to validly contract, except in a prescribed mode, proceeds from a consideration of public policy not peculiar to such boards, but adopted as the policy of the state with reference to inferior boards and public bodies, and it would be difficult to perceive what practical public benefit or result could accrue by legislative limitation or prohibition on the power of such bodies to contract if courts were to allow a recovery where the limitation or prohibition is disregarded. In fact, the plea of hardship urged here was answered in the Zottman case by language as pertinent now as it was then, where the court said: "It may sometimes seem a hardship upon a contractor that all compensation for work done, etc., should be denied him; but it should be remembered that he, no less than the officers of the corporation, when he deals in a matter expressly provided for in the charter, is bound to see to it that the charter is complied with. If he neglect this, or choose to take the hazard, he is a mere volunteer, and suffers only what he ought to have anticipated. If the statute forbids the contract which he has made, he knows it, or ought to know it, before he places his money or services at hazard."

The judgment appealed from is affirmed.

Melvin, J., Shaw, J., Sloss, J., Lawlor, J., and Angellotti, C. J., concurred.