MANUEL VÁZQUEZ, Plaintiff and Appellant, v. MUNICIPALITY OF ARECIBO, Defendant and Appellee.

No. 4463. Argued April 10, 1929.—Decided January 31, 1930.

R. Rivera Zayas, for appellant. F. M. Cadilla and E. López, for appellee.

Mr. Justice Texidor delivered the opinion of the court.

In this case the plaintiff substantially alleged that the Municipality of Arecibo had called for bids for the construction of four kilometers of road in the wards of Dominguito and Esperanza in that municipality; that the council awarded the contract to the plaintiff and authorized the Commissioner of Public Works to sign a formal agreement with the plaintiff, which was executed accordingly, and the agreement was thereafter ratified by the Commissioner of. the Interior of Porto Rico; that the contract was let out at $9,551.40; that after the work had been commenced, the plaintiff was compelled to make some alterations in building the road which increased the original cost by 20 per cent and which the plaintiff executed at the prices specified in the original contract, wherein it was stipulated that alterations exceeding 20 per cent should be paid according to prices first agreed upon by the Commissioner of Public Works; that after the 20 per cent margin of increase became exhausted, the plaintiff had to incur certain extraordinary and unforeseen expenditures by reason of a change in the course of the road and, in pursuance of the contract, the municipality and the plaintiff, on February 8, 1924, executed a supplemental agreement, which was approved by the Commissioner of the Interior and involved the sum of $3,901.70; that the plaintiff has demanded payment of the above sum from the Municipality of Arecibo but the defendant has failed to pay the same.

In its answer the defendant municipality denied that any

contract under competitive bidding had been awarded to the plaintiff for the construction of the four kilometers of road, and averred that a contract without advertising had been executed. It further alleged that the alterations made by the plaintiff in the road were executed for his own benefit and in order to effect savings in the work, and it denied that he had to incur any extraordinary expenditures or that any valid contract had been entered into with the municipality covering the payment of such expenditures; that the plaintiff delivered the road in the middle of 1924 and liquidated the works during the first part of November of the same year, and that after several months had elapsed since such delivery he put in a claim on a supplemental contract, which had never been filed in the office of the municipal secretary nor approved by the municipal council; that the said supplemental contract is void and that the purpose of the claim filed by the plaintiff was to secure payment for work which he had never performed, and with reference to which he submitted no claim at the time the road was delivered; and that the defendant owed no money to the plaintiff. The defendant also interposed a demurrer to the complaint for lack of facts sufficient to constitute a cause of action, in that the additional work was not specified or alleged to have been performed.

A trial was had before the court, which heard the evidence introduced and rendered judgment for the defendant. From that judgment this appeal has been taken by the plaintiff, who assigns error as follows:

"The court erred in rendering judgment for the defendant."

That form of assignment is too general, but it shall not prevent us from considering and deciding the main questions involved in this appeal.

We are of opinion, and so hold, that the complaint in the present case fails to allege essential facts.

The complaint does not state what particular work, alterations, or changes had to be performed by the plaintiff; why

he had to execute them; whether they were imperative or unavoidable; and whether they were first submitted to the Commissioner of Public Works and approved by him in the manner required by the law, the regulations and the contract.

It is not stated or alleged that the said work, which cost more than $500, had been let through competitive bidding; or, if not so let, that it had been exempted from such requirement and the reasons therefor.

What work was it? What alterations were made to the original course of the road? Only vague hints as to these particulars appear from the evidence. A landowner through whose property the road was laid objected to it. But there is no allegation or proof as to the steps taken to overcome such opposition, or as to how the latter forced a change, the cost of which exceeded 35 per cent of the original estimate. This is an important amount. Indeed any sum, however small, would be important where the property or the funds of a municipality are concerned. The money of such communities is the money of the people, of the taxpayers, and its use or investment calls for the exercise of the greatest prudence, which is the aim sought by applicable statutory requirements.

The particulars of the work done and the plans for its execution are not satisfactorily shown. Moreover, from the evidence heard it clearly appears that the officials of the municipality had no previous knowledge of the alterations alleged to have been made by the plaintiff. Under date of February 5, 1924, the plaintiff wrote to the Commissioner of Public Works of Arecibo the following letter (pages 8 and 9 of the transcript of the evidence):

"Arecibo, P. R.—February 5, 1924.—The Municipal Commissioner of Public Works.—City.—Sir: Referring to our conversation in regard to the extra work already executed in the third section of the DOMINGUITO–ESPERANZA road and for which I made timely claim as exceeding 20% of the unit amounts stated in the contract, I beg

leave to submit to you the following prices per unit: 28 cubic meters of dry masonry at $6.00 . . . $168; 521 cubic meters of broken stone rolled and graveled at $2.20 . . . $1,146.20; 3,450 cubic meters of rock excavations at $0.75 . . . $2,387.50; (total) $3,901.70.— Bearing in mind the facts above stated that such work exceeds the 20% and must be dealt with in the manner provided by section 30 of the general stipulations for public works per unit, which form a part of the present contract, and by section 26 of the instructions to bidders, I now beg to request that speedy action be taken in this matter in order that I be paid the value of said work. Respectfully yours, (Signed) Manuel Vázquez, Contractor.''

The plaintiff himself makes reference in that letter to work already executed, not to work pending of execution; and after mentioning the work as already performed, he submits the prices per unit. Even assuming that the work is to be considered as approved, there was no previous agreement as to prices, either with the commissioner or with the assembly, or with any representative of the municipality. And it appears from the evidence that the letter above quoted was sent to the municipal assembly long after February 5, 1924.

Subdivision 27 of the instructions to bidders for that contract (page 87 of the transcript) reads as follows:

''27.—WORK NOT PROVIDED IN THE CONTRACT.—No claim shall be considered for work not provided in the contract unless such work has been previously ordered by the Municipal Commissioner of Public Works with the approval of the Council of Administration, and unless the Municipal Commissioner of Public Works and the contractor have agreed as to the prices to be charged for the said extra work and such prices have been duly approved.''

We find nothing in the evidence which would warrant us in considering as established that the Commissioner of Public Works had previously ordered other work—what work?, we ask ourselves—with the approval of the Council of Administration of the city, or that prior to the commencement of the work, whatever this was, an agreement had been reached

between the commissioner and the contractor as to the prices to be charged. On the contrary, such prices, where quoted, refer to work already done.

We do not agree with the contention of the appellee that the original work had been awarded by contract without advertising. There was competitive bidding in which the appellant participated, but no bid was accepted at the time. Thereafter the matter was reconsidered and authority was given to the Mayor—the title of whose office was then Commissioner of Public Service, Police and Prisons—to execute the contract with Manuel Vázquez, as one of the bidders. This action of the council was perhaps irregular; but, at all events, the basis of such decision was the competitive bidding, and Vázquez contracted in his capacity as a bidder.

We deny the existence of any power in the commissioner or the mayor, alone, to enter into the supplemental contract alleged to have been made. No such power is provided in the Municipal Law, nor could it be given by any municipal body or deduced from the stipulations of the original contract, which are carried over into the supplemental agreement, wherein they are mentioned. The approval of the Commissioner of the Interior was ineffectual, since there is no public executive officer with power to validate that which is in itself null and void. If that contract had been let without advertising and the agreement did not meet the requirements of the law, the Commissioner of the Interior could not render it valid by virtue of his signature. From a certificate issued by the municipal secretary of Arecibo the following appears:

"I CERTIFY:—That as shown by the record on file regarding the construction of the municipal road from Dominguito to Esperanza (third section), the supplemental contract hereinafter transcribed was filed in the office of the Municipal Secretary of Arecibo on December 23, 1927.—The supplemental contract is as follows: Contract supplementing the contract entered into with Mr. Manuel Vázquez, for the construction of the Dominguito–Esperanza road (third section)—This agreement made this 8th day of February, 1924;

between Rafael San Millán, Commissioner of Public Service, Police and Prisons of the city of Arecibo, party of the first part, and Manuel Vázquez, contractor for the construction of the road from Dominguito to Esperanza (third section), party of the second part, WITNESSETH: That in accordance with the price agreed upon with the Commissioner of Public Works, and pursuant to the ordinance of February 7, 1924, approved by the Council of Administration, and made a part hereof, the party of the second part agrees to furnish and deliver all the necessary materials and labor for the following work, not provided for in the original contract:

| | |
|---|---:|
| 28 cubic meters of dry masonry at $6.00_____ | $168. 00 |
| 521 cubic meters of broken stone, rolled and graveled at $2.20_____ | 1, 146. 20 |
| 3,450 cubic meters of rock excavations at $0.75_____ | 2, 587. 50 |

$3, 901. 70

"That all the stipulations set forth in the original contract above mentioned are accepted by the parties herein and made applicable to the within contract; and that this supplemental agreement is subject to the approval of the Hon. Commissioner of the Interior.—In testimony whereof the contracting parties herein affix their signatures hereunto on the date first above given. (Signed) Raf. San Millán, Commissioner of Public Service, Police and Prisons.—(Signed) Manuel Vázquez, contractor.—(Signed) Restituto Blanco, witness.—(Signed) Alberto Rivera, witness.—Approved, (Signed) Guillermo Esteves, Commissioner of the Interior.''

The above contract, which was forwarded to the office of the municipal secretary of Arecibo on December 23, 1927 (the certificate so recites), had not been previously approved by the council; but, even if it had been so approved, it would still be void since it violated the Municipal Law. Section 10 of that Law provides that all public works, the cost of which is to exceed five hundred dollars, must be done on call for bids in municipalities of Class 1, to which class the defendant municipality belongs.

This last consideration moves us to say that if it were claimed that the Municipality of Arecibo intended to ratify the contract in question, such ratification would lie without

the scope of its lawful powers, which the municipality would thus have exceeded in the performance of an act, clearly *ultra vires.*

On this point the appellee cites several very important cases, among which is found that of *Reams* v. *Cooley,* 171 Cal. 150. The quotation is too long to be reproduced here. It will suffice to say that the doctrine laid down in that case is fully applicable herein.

The rule that a subsequent ratification can not render valid an illegal act outside the scope of corporate authority, cited by Dillon in his treatise on "Municipal Corporations," is of universal application.

The appellee also cites the cases of *Porras* v. *Council of Administration,* 37 P.R.R. 689, and *Rivera Collazo* v. *Municipality of San Juan,* 37 P.R.R 454, and quotes from the former the following doctrine, to which we will adhere in deciding the present case:

"When a contract has been awarded after competitive bidding for supplying pipes for an aqueduct, stipulating their delivery at a certain spot, and an additional contract or agreement has been made for the transportation of said pipes to the parts of the aqueduct system where they may be needed, which contract or agreement falls strictly within the statute requiring bidding, failure to hold bids for that work renders the additional contract void."

The court did not commit the error assigned.
The judgment appealed from must be affirmed.