MANUEL VÁZQUEZ, demandante y apelante, *v.* MUNICIPIO DE ARECIBO, demandado y apelado.

No. 4463.—*Sometido:* Abril 10, 1929. *Resuelto:* Enero 31, 1930.

*R. Rivera Zayas,* abogado del apelante; *F. M. Cadilla* y *E. López* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

El demandante en este caso, alegó, esencialmente, que el municipio de Arecibo había puesto en subasta la construcción de cuatro kilómetros de carretera de los barrios Dominguito y Esperanza, en el término municipal de Arecibo, y que el concejo otorgó la buena pro al demandante y autorizó al comisionado de servicio público para que formalizara y suscribiera con el demandante el necesario contrato, como lo hizo, siendo luego ratificado por el Comisionado del Interior de Puerto Rico; que el precio de la subasta fué de $9,551.40; que comenzada la obra, el demandante se vió obligado a verificar ciertas alteraciones, en la construcción del camino, las que produjeron una elevación del costo original de un 20 por ciento, las que realizó el demandante a los mismos precios especificados en el contrato original, en el que se determinaba que las alteraciones que excedieran del 20 por ciento se verificaran a base de precio convenido previamente con el comisionado de obras públicas; que agotado el 20 por ciento adicional, y por consecuencia de haber tenido que hacer una variante en el trazado del camino, el demandante incurrió en gastos extraordinarios e imprevistos y de acuerdo con el contrato se procedió por el municipio y el demandante a formular otro contrato adicional, en 8 de febrero de 1924, al que dió su aprobación el Comisionado del Interior, siendo el valor de este contrato $3,901.70; que el demandante ha gestionado del municipio de Arecibo el pago de los $3,901.70, y no ha logrado que se le pague.

El municipio demandado, en su contestación, negó que se hubiera adjudicado al demandante en subasta la construcción de los cuatro kilómetros de camino, y alegó que lo que se había hecho fué un contrato directo; alegó que las altera-

ciones que el demandante hizo en el camino fueron por su propio beneficio y para hacer economías en el proyecto, negando que tuviera que incurrir en gastos extraordinarios y que para su pago hiciera contrato legal alguno con el municipio; alegó que el demandante entregó el camino a mediados de 1924, y liquidó las obras a principios de noviembre del mismo año, y después de pasar unos meses de la entrega reclamó el pago de un contrato adicional que nunca había sido radicado en la secretaría municipal, ni aprobado por el concejo de administración municipal, y que era nulo, siendo el objeto de su reclamación obtener el pago de obras que nunca realizó, ni fueron reclamadas al entregar el camino; negó adeudar suma alguna al demandante; y mantuvo la excepción previa de falta de hechos, fundada en que no se especifican las obras adicionales, ni que fueran realizadas.

Fué oído el pleito por la corte, y presentada y practicada la prueba; y recayó sentencia declarando sin lugar la demanda. Contra ella se ha interpuesto esta apelación por el demandante, quien en su alegato señala el siguiente error:

"La corte erró al declarar sin lugar la demanda."

La manera de señalar el error es demasiado general. Pero ello no ha de ser obstáculo para que estudiemos y decidamos los principales extremos de esta apelación.

Creemos y declaramos que la demanda en este caso no especifica extremos de toda importancia.

No se ha expresado en la demanda qué obras, alteraciones o cambios se hubieran de hacer por el demandante; por qué motivo tuvo que hacerlas, y si tuvieron el carácter de imprescindibles e inevitables; si fueron previamente sometidas al comisionado de obras públicas, y aprobadas por él en la forma que requieren la ley, los reglamentos, y el contrato.

No se especifica y alega que esas obras de un valor superior a $500 fueran sometidas al trámite de una subasta; y en su caso, que se exentuaron de ese trámite y por qué razón.

¿Qué obras fueron ésas? ¿Qué alteraciones se impusieron al primitivo trazado? Sólo de una manera vaga aparece de

la prueba alguna indicación en cuanto a esos extremos. Un vecino por cuya finca había de pasar el camino, se opuso a ello. Pero no se alega ni se prueba qué gestión se hiciera para combatir esa oposición, ni en qué forma ella impusiera forzosamente un cambio cuyo costo alcanza a más de un 35 por ciento del presupuesto original. Esta cantidad es importante; lo sería, por pequeña que fuera, cualquier suma, cuando se trata de los bienes, del dinero, de una comunidad municipal. Los intereses de esas comunidades, son los del pueblo, los de los contribuyentes; y su empleo o inversión requieren un gran cuidado que se traduce en las exigenciales legales.

De cuáles fueran las obras, planos para su ejecución, etc., no aparece satisfactoria justificación. Es más: aparece claramente de la prueba practicada que la administración municipal de Arecibo no tuvo previo conocimiento de las alteraciones que se alegan hechas por el demandante. En la carta que al Comisionado de Obras Públicas de Arecibo dirige en fecha 5 de febrero de 1924 el aquí demandante y apelante (páginas 8 y 9, transcripción de la evidencia) se lee lo que sigue:.

"Arecibo, P. R.—Febrero 5 de 1924.—Comisionado de Obras Públicas Municipal.—Ciudad.—Señor: Refiriéndome a la conversación sostenida por V. H. con respecto al aumento de obras ya ejecutadas en el tercer trozo DOMINGUITO–ESPERANZA y que oportunamente reclamé por exceder del veinte por ciento de las cantidades unitarias que figuran en el contrato, me permito someterle los precios unitarios siguientes: 28 Metros Cúbicos de mampostería en seco a $6.00 . . . $168.00; 521 Metros Cúbicos de piedra triturada cilindrada y recebada a $2.20 . . . $1,146.20; 3,450 Metros Cúbicos de excavaciones en roca a $0.75 . . . $2,387.50; (total) $3,901.70.—Teniendo en cuenta las razones anteriormente expuestas de que estas obras exceden al veinte por ciento y que deben ser tratadas de acuerdo como lo estatuye el artículo 30 de las condiciones generales de obras públicas unitarias, y que forman parte de este contrato así como también el artículo 26 de la instrucción a los licitadores, me permito oportunamente se tome pronta acción en este asunto para que me sea satisfecho el importe de dicho trabajo.—Atentamente (firmado) Manuel Vázquez, Contratista."

El mismo interesado se refiere a obras ya ejecutadas, no por hacer; y después de declarar ya ejecutadas las obras, somete los precios unitarios. No ha habido, en el caso de que tales obras se den por probadas, un previo acuerdo en cuanto a los precios, ni con el comisionado, ni con la asamblea, ni con representación alguna del municipio. Y esta carta a que nos referimos, aparece, según la prueba, enviada a la asamblea municipal largo tiempo después del 5 de febrero de 1924.

En el apartado 27 de las instrucciones para los licitadores en aquella subasta (página 87 de la transcripción) se lee:

"27.—TRABAJO NO PREVISTO EN EL CONTRATO.—No se admitirá reclamación alguna por trabajos no previstos en el contrato a menos que dichos trabajos hayan sido previamente ordenados por el COMISIONADO MUNICIPAL de obras públicas con la aprobación del Concejo de Administración, y se haya llegado a un acuerdo entre el Comisionado Municipal de Obras Públicas y el contratista acerca de los precios que han de regir en el pago de dichos trabajos adicionales y dichos precios hayan sido aprobados en debida forma."

No encontramos en la prueba nada que nos lleve a declarar como un hecho que el comisionado de obras públicas ordenara previamente otros trabajos (¿cuáles? nos preguntamos) con la aprobación del concejo de administración de la ciudad, ni de que antes de empezar la obra, cualquiera que fuere, se llegara a un acuerdo entre el comisionado y el contratista acerca de los precios que habían de regir; antes por el contrario, esos precios, cuando se dan, se refieren a trabajos ya ejecutados.

No estamos conformes con la contención del apelado de que las obras originalmente fueron adjudicadas por contrato directo. Hubo una subasta, a la que concurrió el apelante; se negó la adjudicación; y luego, se reconsideró la negativa, y se dió al alcalde, entonces comisionado de servicio público, policía y prisiones, autoridad para formalizar el contrato con Manuel Vázquez, como licitador concurrente a la subasta. Irregular quizá la decisión del concejo de

administración; pero de todas formas, la base de la resolución fué la subasta, y el carácter con que concurría y contrataba Vázquez el de licitador en aquélla.

■ Negamos que el comisionado o alcalde tuviera autoridad alguna por sí, para convenir en el contrato adicional que se alega existió. Ni la Ley Municipal se la da, ni se la podía dar cuerpo municipal alguno, ni lo permitían las condiciones del contrato principal que rigen también para llegar al adicional, y que se citan en éste. La aprobación del Comisionado del Interior, no tiene eficacia alguna, ya que no hay funcionario del Poder Ejecutivo que pueda convalidar lo que es por sí ilegal y nulo. Y si ese contrato era directo, y no aparecía en las condiciones de ley, el Comisionado del Interior no lo hizo válido por virtud de su firma. De la certificación expedida por el Secretario Municipal de Arecibo, aparece lo que sigue:

"CERTIFICO:—Que según consta en el expediente incoado con motivo de las obras de construcción del camino municipal de Dominguito a Esperanza (tercer trozo), el contrato adicional que a continuación se transcribe fué radicado en la Secretaría Municipal de Arecibo el día 23 de diciembre de 1927.—El contrato adicional dice: Contrato adicional al contrato celebrado con don Manuel Vázquez, para las obras de construcción del camino de 'Dominguito a Esperanza' (tercer trozo)—Este contrato celebrado hoy 8 de febrero de 1924, entre Rafael San Millán, Comisionado de Servicio Público, Policía y Prisiones de la ciudad de Arecibo, como primera parte; y Manuel Vázquez, rematista de las obras del camino Dominguito a Esperanza (tercer trozo), como segunda parte, HACE SABER:—Que de acuerdo con el precio convenido con el Comisionado de Obras Públicas y la ordenanza de 7 de febrero de 1924 aprobada por el Concejo de Administración, la cual se adiciona a este contrato, la segunda parte contratante suministrará y acopiará los materiales y proveerá la mano de obra necesaria para el siguiente trabajo, no previsto en el contrato principal:

| | |
|---|---|
| 28 metros cúbicos de mampostería en seco a $6.00___ | $168.00 |
| 521 metros cúbicos de piedra triturada, cilindrada y recebada a $2.20_____ | 1,146.20 |
| 3,450 metros cúbicos de excavaciones en roca a $0.75_ | 2,587.50 |
| | $3,901.70 |

"Que todas las cláusulas especificadas en el contrato primitivo arriba mencionado son aceptadas por ambas partes y aplicables a este contrato; y que este contrato adicional queda sujeto a la aprobación del Hon. Comisionado del Interior.—En testimonio de todo lo cual las partes contratantes firman de su puño y letra, al pie y separadamente en la fecha arriba indicada, a los efectos legales. (Firmado) Raf. San Millán, Comisionado de Servicio Público, Policía y Prisiones.—(Firmado) Manuel Vázquez, Contratista.—(Firmado) Restituto Blanco, Testigo.—(Firmado) Alberto Rivera, Testigo.—(Aprobado) (Firmado) Guillermo Esteves.—Comisionado del Interior."

Ese contrato que fué enviado a la Secretaría Municipal de Arecibo el 23 de diciembre de 1927 (así lo dice la certificación) no fué previamente aprobado por el concejo, y si lo hubiera sido, sería tan nulo como lo es ahora, porque la Ley Municipal había sido violada. El artículo 10 de esta Ley Municipal prescribe que toda obra pública cuyo valor exceda de quinientos dollars se haga mediante subasta, en los municipios de primera clase, como lo es el de Arecibo.

Esta última consideración nos lleva a declarar que si se interpretara que el municipio de Arecibo quiso ratificar ese contrato, tal ratificación estaría fuera de sus facultades legales y hubiera así el municipio ido más allá de lo que la ley le permitía, siendo ese acto *ultra vires*.

El apelado cita varios casos importantísimos, entre ellos la decisión en *Reams* v. *Cooley*, 171 Cal. Rep. 150. La cita es muy larga para ser reproducida; y baste con declarar que la doctrina jurídica es perfectamente aplicable a este caso ante nosotros.

La declaración de que una subsecuente ratificación no puede convertir en válido un acto ilegal realizado en exceso de las facultades de una corporación municipal citada por el tratadista Dillon en su obra "Municipal Corporations," es de derecho universal.

Cita el apelado los casos *Porras* v. *Concejo de Administración*, 37 D.P.R. 741, y *Rivera Collazo* v. *Municipio de San*

*Juan,* 37 D.P.R. 486; y del primero un párrafo que nos sirve de norma y guía en el caso presente, en el que lee así:

"Adjudicado un contrato de suministro de tubos para un acueducto que proveía el depósito de éstos en determinado sitio, un contrato o convenio adicional para la transportación de dichos tubos a los sitios del sistema de acueducto en que fueren necesarios, cayendo estrictamente dentro del estatuto que exige una subasta, la no celebración de ésta hace nulo dicho convenio adicional."

No incurrió la corte en el error que se señala.

*Debe confirmarse la sentencia apelada.*