Filed 1/7/15  Fleming v. Capistrano Unif. School Dist. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAMES A. FLEMING, | |
| Plaintiff and Appellant, | G048523 (Consol. with G048771) |
| v. | (Super. Ct. No. 30-2011-00509686) |
| CAPISTRANO UNIFIED SCHOOL DISTRICT, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment and postjudgment order of the Superior Court of Orange County, James Di Cesare, Judge.  Affirmed.

Law Office of J. Scott Smith and J. Scott Smith for Plaintiff and Appellant.

Woodruff, Spradlin & Smart, Daniel K. Spradlin and M. Lois Bobak for Defendant and Respondent.

*        *        *

James A. Fleming sued Capistrano Unified School District (CUSD) for breach of contract arising out of his former employment as CUSD superintendent. He alleged CUSD breached an agreement to provide him a defense to criminal charges and an agreement to pay him 18 months of salary as severance pay in exchange for his resignation as superintendent. The trial court granted CUSD's motion for summary judgment and motion for attorney fees and costs. Fleming appealed from the judgment and from the order awarding CUSD attorney fees. We affirm.

Based on the undisputed facts, we conclude CUSD was not contractually obligated to provide Fleming a defense to the criminal charges or to pay him 18 months of salary as severance pay. In both situations, the CUSD board of trustees (the CUSD Board) did not take the official action required by law to contractually bind CUSD. In addition, Fleming did not timely present a government claim and, therefore, his claim for severance pay is barred. The trial court did not err by awarding CUSD attorney fees because substantial evidence supported the court's finding that Fleming's claims arose out of a contract with an attorney fees provision.

## FACTS

### I.

### Fleming's Employment as Superintendent

Fleming was hired as CUSD superintendent in 1991 for a four-year term pursuant to a written employment agreement, referred to as the superintendent contract. Over the years, the superintendent contract was amended and extended several times, and the final contract had an expiration date of June 30, 2008. Each of the amendments or extensions to the superintendent contract was negotiated between Fleming and the CUSD Board's president. Sometimes Fleming worked with CUSD's legal counsel to arrive at

2

specific terms. Once the terms were worked out, the CUSD Board's president placed the amendment or extension on the agenda of a meeting of the CUSD Board, at which the CUSD Board would discuss the amendment or extension, make changes, or accept the amendment or extension as presented. Only after the CUSD Board discussed and approved the amendment or extension would the CUSD Board's president sign it.

In 2005, a group of residents called for terminating Fleming's employment and began circulating petitions to recall the CUSD Board. The Orange County Registrar of Voters rejected the petitions, an action a panel of this court upheld in *Capo for Better Representation v. Kelley* (2008) 158 Cal.App.4th 1455, and the recall effort failed. Nonetheless, some residents continued their efforts to remove the CUSD Board. Some appeared at meetings of the CUSD Board and stated the Orange County District Attorney intended to investigate and indict Fleming.

## II.
### Amendment No. 11

Fleming told the CUSD Board's president, Marlene Draper, that he was considering resigning and wanted an inducement to stay. In response, on July 12, 2006, the CUSD Board approved amendment No. 11 to the superintendent contract (Amendment No. 11). It provided, among other things, that the superintendent contract could be changed or modified only by the mutual written consent of the parties and that the contract could be terminated only by the parties' mutual consent or Fleming's gross misconduct. Amendment No. 11 provided that if the contract were terminated by mutual consent, Fleming would be entitled to severance pay equal to one month of salary for each month remaining on the contract, up to a maximum of 18 months. Finally, Amendment No. 11 provided, "[i]n the event of any dispute between [Fleming] and the District with respect to this contract or any benefits provided by this contract, the Board

3

will pay legal fees and related costs incurred by [Fleming] to enforce rights under this contract, unless [Fleming] is convicted of criminal act[s] related to job performance."

Soon after the CUSD Board approved Amendment No. 11, according to Fleming, Draper told him the CUSD Board regretted its decision and now wanted him to leave. Fleming stated he told Draper he had turned down other opportunities in order to stay at CUSD and intended to "pursue the rights of my contract." By this time, both Fleming and Draper were aware the district attorney was conducting an investigation into whether Fleming was maintaining an unlawful "enemies list."

Fleming claimed that in a series of conversations in July 2006, Draper told him that if he resigned quietly, then, pursuant to Amendment No. 11, CUSD would pay for his defense against the criminal charges and, provided he were not convicted, pay him 18 months of salary as severance pay. Fleming asked, "how we would know if I was ever going to be convicted or not convicted." Fleming stated that Draper replied the CUSD Board planned to hire an independent investigator, and if the investigator concluded Fleming had not committed an offense, then CUSD would pay him the full 18 months of salary as severance pay.

## III.

### The CUSD Board's Acceptance of Fleming's Retirement

On July 29, 2006, Fleming notified the CUSD Board he intended to retire effective August 31, 2006. When the CUSD Board met on July 29, some members of the CUSD Board publicly praised Fleming's service. Some members of the public also praised Fleming's service, while others strongly criticized Fleming and his leadership as superintendent, and accused him of unethical conduct.

The CUSD Board then recessed into closed session for two and three-quarter hours to discuss "Public employment, Superintendent, Superintendent Support Personnel, Public Employee Discipline/Dismissal/Release." The CUSD Board's

4

minutes reflect that while in closed session, the CUSD Board passed two motions: (1) "Direct legal counsel to secure the services of an independent investigator to conduct an investigation into various allegations of wrongdoing by district employees"; and (2) "Accept the Superintendent's retirement effective August 31." The CUSD Board did not terminate Fleming's employment for gross misconduct.

## IV.

### Criminal Investigation and Provision of Defense

In August 2006, the CUSD Board retained retired Orange County Superior Court Judge Stuart T. Waldrip to independently investigate allegations that current and former CUSD employees, including Fleming, had engaged in misconduct. On December 28, 2006, Judge Waldrip presented the CUSD Board with a written report concluding that, with one possible exception not involving Fleming, no CUSD employee had engaged in unlawful activity. As to Fleming, Judge Waldrip concluded: "He should have been more aware of the potential unfavorable impact on the District of his conduct. But he is gone." The CUSD Board considered and debated Judge Waldrip's report at a public meeting on March 5, 2007.

By mid-August 2006, it was clear the Orange County District Attorney was conducting an investigation of Fleming. In a letter dated August 31, 2006, Fleming's attorney, Ronald G. Brower, requested CUSD to "utilize the discretion permitted in Education Code Sections 35204 and 35205 as well as Government Code Section 995.8 to provide for legal defense of your Superintendent" for "matters which may come before the Grand Jury, the District Attorney and the courts related to actions taken by the Superintendent in the performance of his duties." A CUSD staff report recommended CUSD retain counsel for Fleming through the grand jury proceedings, with the notation the CUSD Board had the ability at any time to terminate a contract with Fleming's

5

counsel. On September 11, 2006, the CUSD Board accepted the recommendation and voted to approve a contract for legal services with Brower.

At the public meeting held on March 5, 2007, the CUSD Board voted to terminate the contract with Brower and to cease paying Fleming's criminal defense fees. Fleming was indicted by the Orange County Grand Jury in May 2007. In August 2007, the CUSD Board denied Fleming's request that CUSD resume paying the cost of Fleming's criminal defense.

## V.

### Fleming's Request for Reimbursement of Fees

The Orange County Superior Court dismissed two of the three criminal charges alleged against Fleming. A panel of this court granted Fleming's petition for writ of mandate and directed the superior court to dismiss the remaining charge. (*Fleming v. Superior Court* (2010) 191 Cal.App.4th 73.) The California Supreme Court denied the People's petition for review.

On June 21, 2011, Fleming's counsel presented a letter to the CUSD Board, demanding (1) reimbursement of attorney fees and legal expenses incurred by Fleming in defending the criminal charges and (2) payment of 18 months of salary as severance pay. The demand was returned on the ground it had not been presented within the time required by the Government Claims Act (Gov. Code, § 810 et seq.), and later the CUSD Board denied Fleming's application to present a late claim.

### PROCEDURAL HISTORY

Fleming filed a complaint against CUSD in September 2011 and an amended complaint in February 2012. The amended complaint asserted one cause of action—for breach of contract. Fleming alleged he was contractually entitled to 18 months of salary as severance pay, payment of his criminal defense fees, and payment of

6

attorney fees incurred in defending several civil lawsuits against him for actions related to his employment as CUSD superintendent.

The trial court granted CUSD's motion for summary judgment. The court ruled (1) Fleming could not recover severance pay because his claim under the Government Claims Act was not timely presented; (2) CUSD was not obliged under Amendment No. 11 or relevant provisions of the Government Code to provide Fleming a defense to the criminal charges; and (3) CUSD fulfilled whatever obligation it might have had to provide Fleming a defense in the civil lawsuits. Judgment was entered in April 2013. Fleming timely filed a notice of appeal from the judgment, which appeal was docketed as case No. G048523.

CUSD moved to recover attorney fees and costs. By order dated July 15, 2013, the trial court granted CUSD's motion and awarded CUSD $123,233 in attorney fees and $6,660.10 in costs. Fleming timely filed a notice of appeal from that order, which appeal was docketed as case No. G048771. We ordered consolidation of case No. G048523 with case No. G048771.

## DISCUSSION: APPEAL FROM THE JUDGMENT

## I.

## Standard of Review

In case No. G048523, Fleming challenges the judgment entered after the trial court granted CUSD's motion for summary judgment. A motion for summary judgment or summary adjudication is properly granted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] "'We review the trial

7

court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.'" [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' [Citation.]" (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286.)

## II.

### Fleming Cannot Recover on His Claim for Provision of a Defense to the Criminal Charges.

A. *The Issue*

The first issue raised by the appeal from the judgment is whether CUSD breached an agreement to provide Fleming a defense to the criminal charges. Based on the undisputed facts, and exercising de novo review, we conclude the answer to that question is no.

At the outset, it is necessary to clarify what is and is not in issue. In September 2006, the CUSD Board voted to approve payment of Fleming's criminal defense legal fees and expenses through the grand jury investigation, and, in March 2007, voted to cease paying those fees and expenses. The CUSD Board was entitled to retract its formal decision to provide Fleming a defense. Fleming does not contend otherwise; instead, he argues on appeal there is a triable issue of fact as to whether CUSD was required under an *implied contract* to provide him a defense to the criminal charges. He argues the CUSD Board "acted in a manner consistent with the promises made by Ms. Draper, and this, when taken together with the totality of the other circumstances, is more than ample evidence that the parties had reached a mutual understanding which gave rise to binding contractual obligations."

8

B. *CUSD Never Took Official Action to Provide Fleming a Defense.*

A governmental entity may not be held liable under an implied contract if a statute prescribes the only means by which the governmental entity may enter into a contract. (*Reams v. Cooley* (1915) 171 Cal. 150, 154; *County of Sonoma v. Santa Rosa* (1894) 102 Cal. 426, 429.) "Where the statute prescribes the only mode by which the power to contract shall be exercised the *mode* is the *measure* of the power. A contract made otherwise than as so prescribed is not binding or obligatory as a contract and the doctrine of implied liability has no application in such cases." (*Reams v. Cooley*, *supra*, at p. 154.) As stated in *Strauch v. San Mateo Junior College Dist.* (1930) 104 Cal.App. 462, 464-465: "The rule is well settled . . . that when by statute the power of a board or municipality to make a contract is limited to a certain prescribed method to which there has been no attempt to conform, a contract attempted to be made is void, and no implied liability can arise for the benefits received thereunder [citations]."

Several statutes prescribe the means by which CUSD could enter into a contract with Fleming to provide him a criminal defense. Specific to this issue is Government Code section 995.8, which states, in relevant part: "A public entity is not required to provide for the defense of a criminal action or proceeding . . . brought against an employee or former employee, but a public entity may provide for the defense of a criminal action or proceeding . . . brought against an employee or former employee if: [¶] (a) The criminal action or proceeding is brought on account of an act or omission in the scope of his employment as an employee of the public entity; and [¶] (b) The public entity determines that such defense would be in the best interests of the public entity and that the employee or former employee acted, or failed to act, in good faith, without actual malice and in the apparent interests of the public entity."

"In contrast to the provisions relating to the mandated defense of public employees in civil actions, Government Code section 995.8 affirmatively declares that public entities are not required to provide for the defense of criminal actions brought

9

against their employees, but instead permits the entities to provide defenses in certain circumstances. [¶] '[W]here . . . a criminal action is involved, the entity is given the right to refuse the employee a defense *arbitrarily*, with only a permissive right to compensate him for his attorney's fees and costs in the instances noted.' [Citation.]" (*Los Angeles Police Protective League v. City of Los Angeles* (1994) 27 Cal.App.4th 168, 176, fn. omitted; see *City of Bell v. Superior Court* (2013) 220 Cal.App.4th 236, 255 ["[Government Code section 995.8] is restrictive. It indicates that a public entity 'may provide' a defense for a public employee *if* the two circumstances set forth in the statute exist; it does not in any way suggest that a public entity may also provide a defense if those circumstances do not exist."].)

Under Government Code section 995.8, CUSD was not required to provide Fleming a defense to the criminal charges and had discretion to do so only if the CUSD Board would have to take official action and find the two conditions of the statute had been met. In that regard, Education Code section 35163 states: "Every official action taken by the governing board of every school district shall be affirmed by a formal vote of the members of the board, and the governing board of every school district shall keep minutes of its meetings . . . in which shall be recorded every official act taken." (See, e.g., *Cloverdale Union H. S. Dist. v. Peters* (1928) 88 Cal.App. 731, 736 [board approval of contract required].)

In addition, to the extent Fleming claimed an implied modification or amendment to his employment contract to provide him a criminal defense, Government Code section 53262, subdivision (a) provides that "[a]ll contracts of employment with a superintendent, deputy superintendent, [or] assistant superintendent . . . shall be ratified in an open session of the governing body which shall be reflected in the governing body's minutes."

The cited code provisions prescribe the means by and circumstances under which a government entity may agree to provide a criminal defense for an employee, and

10

the means by which a school district, in particular, may enter into a contract of employment with the superintendent.  Therefore, as a matter of law, CUSD was contractually obligated to provide Fleming a defense to the criminal charges only if the CUSD Board acted in the statutorily prescribed manner.  Under the undisputed facts, the only official action taken to provide Fleming a criminal defense was made on September 11, 2006, when the CUSD Board voted to provide him a defense through the grand jury proceedings.  When the CUSD Board met on July 29, 2006, it did not take official action to provide Fleming a criminal defense.  While in closed session, the CUSD Board passed only two motions recorded in the minutes—(1) to hire an independent investigator and (2) to accept Fleming's retirement.  Nowhere do the official minutes of the CUSD Board's July 29, 2006, meeting reflect an agreement to provide Fleming a criminal defense or to amend or modify the superintendent contract.

C.  *No Implied Contract*

Fleming cites *Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240 (*Youngman*) and *Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171 (*Retired Employees*), as supporting his contention CUSD could be bound under an implied contract.

In *Youngman*, *supra*, 70 Cal.2d at page 243, the plaintiffs alleged an irrigation district was bound by an implied contract to provide its employees with annual merit pay increases.  The California Supreme Court held the trial court erred in sustaining a demurrer because the complaint sufficiently pleaded facts to support an implied contract with the irrigation district.  (*Youngman*, *supra*, at pp. 244, 247.)  The court confirmed the established rule that "[g]overnmental subdivisions may be bound by an implied contract if there is no statutory prohibition against such arrangements."  (*Id.* at p. 246.)  The court noted the irrigation district's contracting authority was found in the Water Code, and "[t]he Water Code prescribes no formal requirements for the

11

consummation of an employment contract by the board." (*Ibid.*) Here, in stark contrast, the Government Code and the Education Code prescribe formal requirements for agreeing to provide a criminal defense for an employee and for entering into an employment contract with a superintendent of schools.

In *Retired Employees*, *supra*, 52 Cal.4th at page 1176, the California Supreme Court addressed the following question certified by the Ninth Circuit Court of Appeals: "'Whether, as a matter of California law, a California county and its employees can form an implied contract that confers vested rights to health benefits on retired county employees.'" Citing *Youngman*, the court concluded, "a county may be bound by an implied contract under California law if there is no legislative prohibition against such arrangements, such as a statute or ordinance." (*Retired Employees*, *supra*, at p. 1176.) The basis and reasoning of the court's decision were that "[u]nder California law, contractual rights may be implied from legislative enactments under limited circumstances." (*Id.* at p. 1185.) The court explained the plaintiff did not seek to recover "'under a contract made in violation of the particularly prescribed statutory mode,'" but instead claimed to have "contractual rights that are implied in resolutions duly approved by County." (*Id*. at p. 1187.)

*Retired Employees* does not support Fleming because he does not claim to have contractual rights that are implied in resolutions or acts duly approved by the CUSD Board. He does not argue that a right to have CUSD provide him a criminal defense can be implied from Amendment No. 11 or from the CUSD Board's official action, later retracted, to provide him a defense through the grand jury proceedings. Instead, he argues he has the right to recover under an implied contract that was not made in compliance with the prescribed statutory mode. Under a long line of authority, culminating in *Retired Employees*, CUSD cannot be bound under such an implied contract. (*Retired Employees*, *supra*, 52 Cal.4th at p. 1176; *Youngman*, *supra*, 70 Cal.2d at p. 246; *Reams v. Cooley*, *supra*, 171 Cal. at p. 154; *County of Sonoma v. Santa Rosa*,

12

*supra*, 102 Cal. at p. 429; *Strauch v. San Mateo Junior College Dist.*, *supra*, 104 Cal.App. at pp. 464-465.)

Although no implied contract can arise, the undisputed facts demonstrate that both the CUSD Board and Fleming knew and understood the statutory prescriptions for contracting. Each time Fleming's contract was amended or extended, the CUSD Board's president presented the amendment or extension to the CUSD Board for discussion and approval. When the CUSD Board decided to provide Fleming a defense through the grand jury proceedings, it did so by formally passing a motion reflected in the minutes, after having received a memorandum from staff, addressing the requirements of Government Code section 995.8.

### III.

### Fleming Cannot Recover on His Claim for
### 18 Months of Salary as Severance Pay.

A. *Framing the Issue*

The second issue raised by the appeal from the judgment is, broadly speaking, whether Fleming can recover 18 months of salary as severance pay from CUSD. To better frame the issue, it is important to trace the evolution of Fleming's theory for recovery of severance pay. In the amended complaint, Fleming alleged he was entitled to recover 18 months of salary as severance pay pursuant to the terms of Amendment No. 11 because he was forced to resign as CUSD superintendent. CUSD, in its motion for summary judgment, argued Fleming's claim for severance pay was barred because Fleming did not submit a government claim within one year after August 31, 2006, the effective date of his retirement, as required by Government Code section 905.

In opposition to the motion for summary judgment, Fleming argued his right to severance pay arose out of "the parties' contractually-ratifying Mutual Agreement and the Superintendent Contract, whereby CUSD expressly promised

13

Fleming that, so long as Fleming was not convicted of, or determined through official investigation to have committed, a criminal act, CUSD would pay Fleming his contractual 18-month cash settlement." This description is a mouthful. It seems to mean that, during private meetings in July 2006, Fleming and Draper reached an oral agreement whereby CUSD would pay Fleming the maximum 18 months of salary as severance pay, if Fleming agreed to resign as superintendent and was not convicted of a criminal act, and this oral agreement ratified Amendment No. 11.

In the appellant's opening brief, Fleming further refined this agreement to mean: "Plaintiff[']s rights to the 18-month cash settlement were based on the resignation agreement he negotiated with Ms. Draper, not on the language of Amendment 11 alone. . . . Amendment 11 does not, in and of itself, give rise to an entitlement to 18 months' severance pay. Rather by incorporating the terms of Government Code section 53260, Amendment 11 merely provides that if the parties mutually agreed to terminate the contract, the maximum cash settlement Plaintiff 'may' receive is 18 months' salary. Since Amendment 11 does not provide that Plaintiff shall receive 18-months' salary, but instead refers to a 'settlement['] that he 'may' receive, the contract contemplates that before a mutual agreement to terminate the contract can arise, there will be additional negotiations as to the terms of any 'settlement' of Plaintiff[']s rights. Plaintiff's entitlement to the 18-month cash settlement is thus based on the promises made by Marlene Draper that Plaintiff would receive the maximum possible cash settlement so long as he was not convicted of a crime." Based on this alleged oral agreement with Draper reached in July 2006,[1] Fleming argues his breach of contract cause of action did not accrue until December 2010, when a panel of this court issued *Fleming v. Superior Court*, *supra*, 191 Cal.App.4th 73.

---

[1] Fleming calls this the "resignation agreement" and, for convenience, so shall we.

Fleming no longer pursues the theory he is entitled to severance pay based on Amendment No. 11 alone: He states in his opening brief that "Amendment 11 does not, in and of itself, give rise to an entitlement to 18 months' severance pay."[2] After briefing was completed, we issued an order inviting the parties to submit supplement briefs addressing two issues.[3] The first issue was "[w]hether appellant's claim for breach of contract to pay 18 months of severance pay under the 'resignation agreement' is without merit under Education Code section 35163 and Government Code section 53262, subdivision (a)." Fleming submitted a supplemental brief in which he argues the CUSD Board, by voting to accept his resignation, ratified the resignation agreement, and "[t]he acceptance of an offer of resignation is a form of a contract, and nothing in either statute prohibits a court from relying on ordinary contract principles to imply additional terms into that contract where necessary to protect the reasonable expectations of the parties." Thus, in the supplemental brief, Fleming posits the theory that the CUSD Board's acceptance of his resignation in closed session, which was formally recorded in the CUSD Board's meeting minutes, constituted a contract that included, as extrinsic or implied terms, the resignation agreement he reached with Draper. As consideration, Fleming argues, the resignation agreement called for payment to him of 18 months of salary as severance pay in exchange for his immediate resignation as superintendent.

---

[2] The breach of contract cause of action, as alleged in the amended complaint, was based on Amendment No. 11, which stated that in the event of contract termination, "the provisions of Government Code Section 53260, *et seq.* shall apply, which sections limit the maximum cash settlement that an employee may receive to an amount equal to the monthly salary of the Superintendent, multiplied by the number of months left on the unexpired term of the contract, not to exceed eighteen (18) months . . . ." Amendment No. 11 does not condition payment of severance on Fleming being exonerated of any criminal charges. Fleming resigned effective August 31, 2006. Thus, were Amendment No. 11 the sole basis for Fleming's breach of contract cause of action, it would be barred for failure to file a government claim within one year of accrual as required by Government Code section 911.2.

[3] By issuing the order, we discharged our duties under Code of Civil Procedure section 437c, subdivision (m)(2).

15

As we shall explain, based on the undisputed facts, Fleming cannot recover on his claim for severance pay under the other theories he posits—(1) the resignation agreement as an independent contract ratifying Amendment No. 11, and (2) the CUSD Board's action in accepting his retirement as ratifying the resignation agreement. An alternative ground for affirming summary judgment on the matter of severance pay is Fleming's failure to timely file a claim under Government Code section 911.2.

B. *The Terms of the Resignation Agreement Are Unenforceable.*

1. *The Resignation Agreement as an Independent Contract Theory*

Under the undisputed facts, the resignation agreement was unenforceable as an independent contract as a matter of law. In reviewing an order granting summary judgment, we must liberally construe the evidence in support of the opposing party (*Hartford*, *supra*, 59 Cal.4th at p. 286) and, therefore, we will assume that the evidence established that in July 2006, Fleming and Draper orally reached the resignation agreement. But, as we have explained, every official action of a school district must be affirmed by a formal vote of the school board and recorded in the minutes. (Educ. Code, § 35163.) "[M]embers of a school board acting separately as individuals may not legally bind the district to the obligations of a contract." (*Fleming v. Board of Trustees* (1931) 112 Cal.App. 225, 228.)

In addition, all employment contracts with a superintendent must be ratified in an open session of the governing body and reflected in the governing body's minutes. (Gov. Code, § 53262, subd. (a).) The resignation agreement was, in effect, a contract of employment under Government Code section 53262, subdivision (a), because it directly related to the terms and conditions of Fleming's employment with CUSD. As shown by Amendment No. 11, Fleming and CUSD treated the matter of severance pay as part of the employment contract, and Fleming has referred to the resignation agreement as "contractually-ratifying" Amendment No. 11.

16

There is no evidence the CUSD Board ever affirmed or ratified, and recorded in the official minutes, an agreement by which it would pay Fleming 18 months of salary as severance pay in consideration of his resigning.  The CUSD Board's minutes for July 29, 2006 reflect only that, in closed session, the CUSD Board accepted Fleming's retirement.  Neither Draper, nor any other member of the CUSD Board, acting as an individual, could legally bind CUSD to the obligations of the resignation agreement.

Because the resignation agreement was not made and approved in the manner prescribed by statute, it does not exist or is unenforceable.  (*Reams v. Cooley*, *supra*, 171 Cal. at p. 154; *Strauch v. San Mateo Junior College Dist.*, *supra*, 104 Cal.App. at pp. 464-465.)  Also, Government Code section 53262, subdivision (b) states that "[c]opies of any contracts of employment, as well as copies of the settlement agreements, shall be available to the public upon request."  A member of the public asking for a copy of the resignation agreement would be turned away emptyhanded.

2. *The CUSD Board's Acceptance of Fleming's Resignation Theory*

In his supplemental brief, Fleming argues, "when the board voted to accept [his] resignation, it was ratifying the existence of a contract for [his] resignation," and, therefore, the court may look to extrinsic evidence to determine CUSD's obligations. The terms of the resignation agreement are unenforceable under this theory.

School district boards and other legislative bodies of local governmental agencies are permitted to meet behind closed doors only in specific, statutorily prescribed circumstances.  (See, e.g., Gov. Code, §§ 54954.5-54957.1, 54957.6. 54957.8, 54957.10.) Government Code section 54957, subdivision (b)(1) permits closed session meetings to consider "the appointment, employment, evaluation of performance, discipline, or dismissal of a public employee . . . ."  Such closed session meetings "shall not include

17

discussion or action on proposed compensation except for a reduction of compensation that results from the imposition of discipline." (*Id.*, § 54957, subd. (b)(4).)

Government Code section 54957.1, subdivision (a) requires the legislative body of a local agency to "publicly report any action taken in closed session and the vote or abstention on that action of every member present" of the listed actions. Subdivision (a)(5) of section 54957.1 states: "Action taken to appoint, employ, dismiss, accept the resignation of, or otherwise affect the employment status of a public employee in closed session pursuant to Section 54957 shall be reported at the public meeting during which the closed session is held. Any report required by this paragraph shall identify the title of the position. . . ."

When the CUSD Board met in closed session on July 29, 2006, it accepted Fleming's retirement and reported that action in the minutes pursuant to Government Code section 54957.1, subdivision (a)(5). The minutes do not reflect any other board action relating to Fleming's retirement or resignation. We must presume the CUSD Board performed its governmental duties (*American Microsystems, Inc. v. City of Santa Clara* (1982) 137 Cal.App.3d 1037, 1042) and, therefore, the CUSD Board did not discuss in closed session compensation or terms of a resignation agreement with Fleming.

Fleming argues *Retired Employees*, *supra*, 52 Cal.4th 1171, 1176, supports his position that the CUSD Board's acceptance of his resignation created a contract that included the terms of the resignation agreement. We disagree. As we have explained, the basis and reasoning of the California Supreme Court's decision in *Retired Employees* was that under limited circumstances California law allows contractual rights to be implied from legislative enactments. (*Id.* at p. 1185.) The court concluded that, in general, legislation may be said to create contractual rights "when the statutory language or circumstances accompanying its passage 'clearly ". . . evince a legislative intent to create private rights of a contractual nature enforceable against the [governmental body].""" (*Id.* at p. 1187.) "A contractual right can be implied from legislation in

18

appropriate circumstances.  [Citation.]  Where, for example, the legislation is itself the ratification or approval of a contract, the intent to make a contract is clearly shown."  (*Ibid.*)

By accepting Fleming's retirement, the CUSD Board did not evince, and certainly did not *clearly* evince, an intent to create contractual rights enforceable against CUSD.  The CUSD Board did not ratify or approve a contract, much less one for severance pay, and the CUSD Board would not have been legally permitted to discuss such a contract in closed session.  (Gov. Code, § 54957, subd. (b)(4).)  The act of accepting Fleming's retirement in closed session did not constitute ratification of an undisclosed resignation agreement granting Fleming the right to collect 18 months of severance pay from CUSD.  Nor could the terms of the resignation agreement be implied into the CUSD Board's mere act of accepting Fleming's retirement.

Enforcing the terms of the resignation agreement against CUSD would contradict and undermine the protections afforded by the Ralph M. Brown Act, Government Code section 54950 et seq. (the Brown Act).  When enacting the Brown Act, the Legislature declared:  "[T]he Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business.  It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly.  [¶]  The people of this State do not yield their sovereignty to the agencies which serve them.  The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know.  The people insist on remaining informed so that they may retain control over the instruments they have created."  (Gov. Code, § 54950.)  "'The Brown Act [citation] . . . is intended to ensure the public's right to attend the meetings of public agencies. . . . The Act thus serves to facilitate public participation in all phases of local government decisionmaking and to curb misuse of the democratic process by secret legislation of public bodies.'"  (*McKee v.*

19

*Orange Unified School Dist.* (2003) 110 Cal.App.4th 1310, 1316.)  A backroom agreement to pay a public servant 18 months of salary as severance pay, at a time when some members of the public criticized his leadership and ethics, is the very kind of "'secret legislation'" (*ibid.*) the Brown Act intended to stop.

C.  *Fleming's Claim for Severance Pay Is Time-barred.*

     1.  *Fleming Failed to Submit a Timely Government Claim.*

In our supplemental briefing order, we invited the parties to address this issue:  "In light of appellant's deposition testimony found at page 541 of volume 3 of the appellant's appendix, whether appellant's claim for breach of contract to pay 18 months of severance pay is without merit for failure to present a claim under Government Code section 911.2 within one year of the date on which Judge Waldrip submitted the report of his independent investigation."  We conclude that under the undisputed facts, Fleming's breach of contract cause of action for severance pay is time-barred.

A party seeking to hold a governmental entity liable for breach of contract must file a claim under the Government Claims Act within one year after accrual of the cause of action.  (Gov. Code, § 911.2.)  The one-year period for filing a government claim applies to claims for damages based on breach of implied contract.  (*Voth v. Wasco Public Util. Dist.* (1976) 56 Cal.App.3d 353, 357.)  "The purpose of requiring the filing of claims, and of prescribing limited time frames in which such claims may be filed, is to give the public entity the opportunity to investigate the facts while the evidence is fresh, as well as to settle meritorious cases without the need of litigation."  (*City of Ontario v. Superior Court* (1993) 12 Cal.App.4th 894, 902.)

Fleming filed his government claim against CUSD on June 21, 2011.  His claim for severance pay was untimely if his breach of contract cause of action accrued before June 21, 2010.  Accrual for purposes of Government Code section 911.2 is the date on which the cause of action would be deemed to have accrued under the applicable

20

statute of limitations. (*Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1078.) "A cause of action for breach of contract ordinarily accrues at the time of breach, and the statute begins to run at that time regardless whether any damage is apparent or whether the injured party is aware of his or her right to sue." (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 520, p. 664.)

The terms of the resignation agreement, through which Fleming made his claim for severance pay, were shown by his deposition testimony. Fleming testified he and Draper agreed his right to severance pay would be contingent only on the results of the independent investigation conducted by Judge Waldrip. Fleming testified as follows:

"Q. Have you told me everything you can recall that was discussed between the two of you during these meetings?

"A. It's just—[Draper] promised that both the legal fees and the 18-month assessment would be forthcoming but constantly came back to the statement in the contract that says provided you're not convicted of a criminal violation. [¶] And I asked her how we would know if I was ever going to be convicted or not convicted. That's when she told me about the board's plan to do an investigation and that there would be some report forthcoming at some point, and it was—if that report concluded what I hoped or she hoped it would conclude, that at that point I could expect payment.

"Q. If the report concluded what?

"A. The report concluded that I was not guilty of any criminal violation, because I was concerned that it was kind of open-ended, 'unless you're convicted of a criminal act.'"

Judge Waldrip presented the report of his independent investigation on December 28, 2006, and the CUSD Board considered and debated that report at a public meeting on March 5, 2007. Fleming presented his government claim over four years later. The claim was therefore untimely.

21

Fleming argues no criminal charges were pending when he resigned and "the possibility of a criminal indictment was highly speculative at best." The lack of pending criminal charges reinforces the conclusion that any oral agreement conditioned severance pay on the outcome of the independent investigation. Otherwise, as Fleming himself recognized, the condition would be open-ended, and he would never be entitled to payment if no criminal charges were ever filed against him. Thus, to the extent the resignation agreement was intended to ratify or become part of Amendment No. 11, Fleming's claim for severance pay accrued at the latest when Judge Waldrip presented his report.

2. *CUSD Is Not Estopped from Asserting an Untimely Government Claim.*

Fleming argues CUSD should be estopped from asserting he presented an untimely government claim. "It is well settled that a public entity may be estopped from asserting the limitations of the claims statute where its agents or employees have prevented or deterred the filing of a timely claim by some affirmative act." (*John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 445.) "Estoppel most commonly results from misleading statements about the need for or advisability of a claim; actual fraud or the intent to mislead is not essential." (*Ibid.*) "The required elements for an equitable estoppel are: (1) the party to be estopped must be apprised of the facts; (2) the party to be estopped must intend his or her conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) the other party must rely upon the conduct to his or her injury." (*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1785.)

In *Ortega v. Pajaro Valley Unified School Dist.* (1998) 64 Cal.App.4th 1023, 1044-1045, the court surveyed cases finding an estoppel to invoke the time limitations of the Government Claims Act and concluded: "These cases have the

22

following in common: In each, the public entity or one of its agents engaged in some calculated conduct or made some representation or concealed facts which induced the plaintiff not to file a claim or bring an action within the statutory time; and in each, the plaintiff acted promptly, almost always within a year, after the public entity's conduct which caused the estoppel ceased." (*Ortega v. Pajaro Valley Unified School Dist.*, *supra*, at p. 1047.)

Fleming presented no evidence to show a member of the CUSD Board or any CUSD agent or employee ever engaged in calculated conduct, made a misrepresentation, or concealed facts to induce him not to present a government claim within the statutory time limit. Fleming presented no evidence that anybody said or did anything to suggest he was not required to present a timely government claim or to deter him from doing so. In the discussions between Fleming and Draper in July 2006, before he announced his retirement, Draper did not say anything to Fleming about presenting a claim. Fleming argues he was entitled to rely on Draper's representations to him that CUSD would pay him 18 months of salary as severance pay if he were not convicted of a crime. As we have explained, the evidence established at most that Draper told Fleming that payment of the 18 months of salary as severance pay was contingent on the results of the independent investigation. Fleming did not present his claim to CUSD until more than four years after the results of Judge Waldrip's investigation had been submitted.

Fleming cites *Ocean Services Corp. v. Ventura Port Dist.* (1993) 15 Cal.App.4th 1762, as supporting his estoppel argument. In that case, agents of the defendant, a governmental entity, gave the plaintiff oral and written assurances that it did not have to take further action to perfect a claim and the time to file one would be extended. (*Id.* at p. 1776.) The Court of Appeal, rejecting the defendant's argument that the plaintiff had failed to comply with the claim presentation requirement, concluded, "[t]he claims statute may not be invoked to penalize a plaintiff who at the behest of a

23

public entity has been induced not to take action." (*Ibid.*) In this case, Fleming presented no evidence CUSD did or said anything to induce him not to present a timely claim.

## DISCUSSION: APPEAL FROM THE ORDER AWARDING ATTORNEY FEES

### I.

### Standard of Review

In case No. G048771, Fleming challenges the trial court's postjudgment order awarding CUSD $123,233 in contract-based attorney fees. "'On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.'" (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.) The determination of the amount of fees awarded is reviewed for abuse of discretion. (*Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1017.)

The normal rules of appellate review apply to an order granting or denying attorney fees; i.e., the order is presumed correct, all intendments and presumptions are indulged to support the order, conflicts in the evidence are resolved in favor of the prevailing party, and the trial court's resolution of factual disputes is conclusive. (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1322.) The reviewing court will infer all findings necessary to support the order. (*Apex LLC v. Korusfood.com*, *supra*, 222 Cal.App.4th at p. 1017.) The trial court's express or implied findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious. (*Ibid.*; *Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 882.)

24

## II.

### The Trial Court Did Not Err in Granting
### CUSD's Motion for Attorney Fees.

In the order granting CUSD's motion for attorney fees, the trial court found CUSD was the prevailing party in an action on a written contract, i.e., Amendment No. 11. The attorney fees provision of Amendment No. 11 states: "In the event of any dispute between [Fleming] and the District with respect to this contract or any benefits provided by this contract, the Board will pay legal fees and related costs incurred by [Fleming] to enforce rights under this contract, unless [Fleming] is convicted of criminal act[s] related to job performance."[4]

Fleming argues the trial court erred by granting CUSD's motion for attorney fees because, for two reasons, the fees provision in Amendment No. 11 was inapplicable to his claims. First, he makes a reciprocity argument; that is, if he had sought to recover severance pay while criminal charges against him were pending, he would not have been entitled to recover attorney fees from CUSD under the terms of Amendment No. 11. Based on principles of reciprocity, he argues CUSD should not be able to recover its attorney fees from him. But, as CUSD points out, Amendment No. 11 bars Fleming from recovering attorney fees only if he is "*convicted* of criminal act[s] related to job performance." (Italics added.) Fleming was never convicted of criminal acts, and, therefore, he would not have been prevented from recovering attorney fees if he had sued for severance pay under Amendment No. 11, and prevailed, while the criminal charges were pending against him.

Second, Fleming argues CUSD was not entitled to recover attorney fees because he sought recovery for severance pay under the resignation agreement, not

[4] Although the attorney fees provision is unilateral (it expressly permits only Fleming to recover attorney fees), the trial court correctly concluded it must be interpreted as granting reciprocal rights. (Civ. Code, § 1717, subd. (a); *Santisas v. Goodin* (1998) 17 Cal.4th 599, 611.) Fleming does not contend otherwise.

Amendment No. 11.  He argues:  "Thus, the rights [Fleming] seeks to enforce are not rights 'arising under this contract,' rather they are rights arising under a separate collateral agreement.  Therefore, the fees provision [in Amendment No. 11] is inapplicable."

The trial court made findings related to that contention.  The trial court rejected Fleming's argument that severance pay had not been sought under Amendment No. 11, and found:  "[Fleming] asks the Court to apportion fees incurred in defending against the portion of his claim that was based on the written Superintendent Contract, versus those incurred in defending against the claim of an oral/mutual agreement.  [Fleming] does not attempt to identify the specific fees or hours to discount. . . .  [¶] Even to the extent [Fleming] may have asserted oral promises, he still sought to ground them in the written contract.  The promises were said to be based specifically in Amendment No. 11, and its language on payment of [Fleming]'s legal fees and 18 months' severance. . . . [Fleming] did not plead them as independent causes of action.  He plead[ed] a right to these benefits in a single cause of action for breach of contract within the [first amended complaint], upon which [CUSD] prevailed.  Thus, the suggestion to parse out the claim is not well-taken."

Substantial evidence supported those findings.  In the amended complaint, Fleming pleaded a single cause of action for breach of written contract, based on the superintendent agreement and amendments, including Amendment No. 11.  The amended complaint did not seek recovery of severance pay or criminal defense fees based on the resignation agreement.  Fleming asserted his right to 18 months of salary as severance pay was grounded in Amendment No. 11, which was attached to the amended complaint as an exhibit.  The amended complaint quoted the attorney fees provision of Amendment No. 11 as the basis for recovery of fees.  Fleming never sought leave to amend to allege breach of the resignation agreement or any other agreement.

26

The trial court also assumed that Fleming had pleaded separate, independent claims for breach of written contract and breach of oral contract. The trial court concluded apportionment of attorney fees between causes of action would not be necessary because "any claim of an oral agreement was intertwined and overlapping with the written contract."

When a cause of action for which attorney fees may be recovered is combined with other causes of action for which attorney fees may not be recovered, the prevailing party may recover attorney fees only on the causes of action for which fees are recoverable. (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129.) However, "'[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed.' [Citation.] 'Attorneys fees need not be apportioned between distinct causes of action where plaintiff's various claims involve a common core of facts or are based on related legal theories.' [Citation.] Apportionment is not required when the issues in the fee and nonfee claims are so inextricably intertwined that it would be impractical or impossible to separate the attorney's time into compensable and noncompensable units." (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 158-159; see *Reynolds Metals Co. v. Alperson*, *supra*, at pp. 129-130; *Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1133 [attorney fees awarded the prevailing party need not be apportioned between causes of action "[w]hen the liability issues are so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not"].)

"Where fees are authorized for some causes of action in a complaint but not for others, allocation is a matter within the trial court's discretion." (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1604.) In this case, the trial court did not abuse its discretion by deciding not to apportion attorney fees. The record demonstrates the issues related to Amendment No. 11 and the issues related to the resignation

27

agreement were "so inextricably intertwined that it would be impractical or impossible to separate the attorney's time into compensable and noncompensable units." (*Graciano v. Robinson Ford Sales, Inc.*, *supra*, 144 Cal.App.4th at p. 159.) Fleming did not attempt an apportionment in opposing CSUD's motion for attorney fees.

### DISPOSITION

The judgment and the order granting CSUD's motion for attorney fees are affirmed. Respondent shall recover costs incurred on appeal.


FYBEL, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


ARONSON, J.